Jon G. Miller, Bar No. 150702
jmiller@littler.com
James E. Hart, Bar No. 194168
jhart@littler.com
Kimberly M. Shappley, Bar No. 314672
kshappley@littler.com
LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, California 92612
Telephone:   949.705.3000
Facsimile:    949.724.1201

Attorneys for Defendant
HBH CALIFORNIA, LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE GARCIA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HBH CALIFORNIA, LLC, a Georgia limited liability company, and DOES 1 thought 50, inclusive,<br><br>Defendant. | Case No.  1:25-at-276<br><br>**NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT**<br><br>[Removed from Madera County Superior Court, Case No. MCV094441, Complaint Filed: March 3, 2025] |

**TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA, PLAINTIFF JOSE GARCIA, AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1332(a), 1441(a) and (b), and 1446 Defendant HBH CALIFORNIA, LLC ("Defendant") hereby removes the above-captioned action brought by Plaintiff JOSE GARCIA ("Plaintiff") from the Superior Court for the State of California, in and for the County of Madera to the United States District Court, Eastern District of California.

## I.   STATEMENT OF JURISDICTION

1. This Court has original jurisdiction under 28 U.S.C. section 1332(a)(1), and this case may be removed pursuant to the provisions of 28 U.S.C. section 1441(a), because it is a class action in which the matter in controversy exceeds $5,000,000, and it is between "citizens of different States" under the Class Action Fairness Act ("CAFA"). If any class member is diverse from any defendant, minimal diversity is met. 28 U.S.C. § 1332(d)(2); *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1194 n.24 (11th Cir. 2007)).

2. As set forth below, this case meets all of Section 1332's requirements for removal and is timely and properly removed by the filing of this Notice.

## II.   VENUE

3. This action was filed in the Superior Court for the State of California for the County of Madera. Accordingly, venue properly lies in the United States District Court for the Eastern District of California pursuant to 28 U.S.C. sections 84, 1391, 1441 and 1446.

## III.   STATUS OF PROCESS, PLEADINGS AND ORDERS

4. On March 3, 2025, Plaintiff Jose Garcia ("Plaintiff") filed a Class Action Complaint against Defendant in Madera County Superior Court, titled: *JOSE GARCIA, individually and on behalf of all others similarly situated, vs. HBH CALIFORNIA, LLC, a Georgia limited liability company, and DOES 1 through 50, inclusive,* Madera County Superior Court Case No. MCV094441 (hereinafter, the "Complaint"). The Complaint asserts the following Class Action Claims: (1) Failure to Provide Compliant Meal Breaks and/or Pay Premiums, (2) Failure to Provide Compliant Rest Breaks and/or Pay Premiums, (3) Failure to Pay Overtime Wages, (4) Failure to Pay Minimum Wages, (5) Failure to Pay Timely Wages,

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, California 92612
949.705.3000

2
NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT
4906-7010-9744.6 / 052490.1106

(6) Failure to Provide and Maintain Accurate Itemized Wage Statements, and (7) Unfair Business Practices. On March 3, 2025, Plaintiff filed the Summons for this Complaint. Attached as **Exhibits A** and **B** to the Declaration of Kimberly M. Shappley ("Shappley Decl.") is a true and correct copy of the Summons and Complaint referenced in this Paragraph.

5.  On March 6, 2025, Defendant was served the Summons, Complaint, and Civil Case Cover Sheet. (Shappley Decl. ¶ 5). A true and correct copy of the Civil Case Coversheet is attached to the Shappley Decl. as **Exhibit C**. On March 6, 2025, Plaintiff filed a proof of service of summons with the Madera County Superior Court, a true and correct copy of which is attached to the Shappley Decl. as **Exhibit D**. On March 6, 2025, the Clerk of Court issued a Notice of Case Management Conference, a true and correct copy of which is attached to the Shappley Decl. as **Exhibit** E.

6.  On April 3, 2025, Defendant filed its Answer in the State Court Action. (Shappley Decl. ¶ 7). Attached as **Exhibit F** to the Shappley Decl. is a true and correct copy of Defendant's Answer filed with the State Court. The documents attached as **Exhibits A** through **F** to the Shappley Decl. constitute all the process, pleadings or orders related to this case that were filed and/or served upon Defendant or filed or received in the State Court Action. To Defendant's knowledge, no further process, pleadings, or orders related to this case have been filed in Madera Superior Court. (Shappley Decl. ¶9). A copy of the online docket in the State Court Action as of April 7, 2025, is attached to the Shappley Decl. as **Exhibit G**. The attachments thereby satisfy the requirements of 28 U.S.C. § 1446(a).

### IV. TIMELINESS OF REMOVAL

7.  This Notice of Removal is timely filed in accordance with 28 U.S.C. section 1446(b) and Rule 6(a)(1)(C) of the Federal Rules of Civil Procedure. "Section 1446(b)(1) and (b)(3) specify that a defendant must remove a case within thirty days of receiving from the plaintiff either an initial pleading or some other document, if that pleading or document shows the case is removable." *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F3d 1121, 1123 (9th Cir. 2013); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (the 30-day removal period runs from the service of the summons and complaint). Plaintiff served Defendant with a copy of Plaintiff's Summons and Complaint on March 6, 2025, which means the thirty-deadline for removal falls on Saturday, April 5, 2025. (Shappley Decl., ¶

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, California 92612
949.705.3000

3

NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

4906-7010-9744.6 / 052490.1106

5). Because the removal deadline falls on a weekend, removal on or before Monday April 7, 2025, is timely. This Notice of Removal is filed on April 7, 2025, and is therefore timely. *See Yanik v. Countrywide Home Loans, Inc.*, No. CV 10-6268 CA (RZx), 2010 U.S. Dist. LEXIS 115717, fn. 6 (C.D. Cal. 2010) ("Because 30 days from July 22, 2010 falls on a weekend, defendants had until August 23, 2010 [the following Monday] to remove."); *Williams v. Leonard*, No. C 02-05084 CRB, 2003 U.S. Dist. Lexis 772, at *2-3 (N.D. Cal. Jan. 13, 2003) (denying plaintiff's motion to remand and explaining pursuant to Rule 6(a), "when the last day of a specified time period falls on a weekend, the party has until the end of the following business day to file" and, therefore, when defendants' thirty days from service of the complaint and summons elapsed on a Saturday, defendants had until the end of the following business day, a Monday, to file their petition for removal); *Gold Town Corp. v. UPS,* 519 F. Supp. 3d 169, 173-74 (S.D.N.Y. 2021) (finding the Federal Rules allow for a removal filing made 32 days after service of the summons and complaint when the last day of the 30-day filing period falls on a Saturday).

**V.    REMOVAL JURISDICTION PURSUANT TO CAFA**

8. As set forth below, this Court has jurisdiction over this case under CAFA, 28 U.S.C. § 1332(d). CAFA grants federal district courts original jurisdiction over class action lawsuits filed under federal or state law in which there are greater than 100 members of the class; the defendant is not a state, state official, or other governmental entity; any member of a plaintiff class is a citizen of a state different from any defendant; and the amount in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d). This case meets each of those requirements and may be removed pursuant to the provisions of 28 U.S.C. § 1441(a).

### A. Plaintiff's Case Is Pled As A Class Action.

9. Under CAFA, a "class action" means "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar State Statute or rule of juridical procedure authorizing an action to be brought by one or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).

10. Plaintiff's Complaint asserts that, consistent with Rule 23, Plaintiff is bringing a class action on behalf of all current and/or former similarly situated California citizens who are or were employed by Defendant in California during the Class Period. (*See* Complaint, ¶ 2). Plaintiff is seeking

4

NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

4906-7010-9744.6 / 052490.1106

to represent the putative class for alleged wage and hour violations from four years prior to the filing of the Complaint through the date of certification. (Complaint, ¶¶ 3-4). Thus, Plaintiff has brought a class action.

### B. Plaintiff Brought This Action On Behalf of More Than 100 Persons.

11. CAFA provides that "the number of members of all proposed plaintiff classes in the aggregate [not be] less than 100." 28 U.S.C. § 1332(d)(5)(B). CAFA defines "class members" as those "persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action." 28 U.S.C. §1332(d)(1)(D).

12. Here, the putative class Plaintiff purports to represent exceeds 100 members. (Declaration of Ami Huff ("Huff Decl.") ¶ 7.) Plaintiff defines the potential class to include, on average, at any one time during the Class Period, over 250 class members. (*See* Complaint ¶ 27.a.) In addition, Plaintiff estimates that due to turnover, the total number of class members is more than 500 individuals. (*Id*.) Although Defendant disputes the propriety of Plaintiff's class definition, Defendant alleges that it employed approximately 1,974 non-exempt employees in California during the relevant time period.

13. Thus, Plaintiff's proposed class encompasses at least 1,974 employees at a minimum, and CAFA's numerosity requirement is satisfied. *See* 28 U.S.C. § 1332(d)(5)(B).

### C. Defendant is Not a State, State Official, or Governmental Entity.

14. Under 28 U.S.C. § 1332(d)(5)(B), CAFA does not apply to class actions where "primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief."

15. Defendant is a limited liability company, not a state, state official, or other governmental entity exempt from the CAFA. (Huff Decl. ¶ 8.)

### D. Plaintiff is a Citizen of California.

16. CAFA diversity jurisdiction exists if "any member of a class of plaintiffs is a citizen of a state different from any defendant." 28 U.S.C. § 1332(d)(2)(A). In a class action, only the citizenship of the named parties is considered for diversity purposes and not the citizenship of the class members. *Snyder v. Harris*, 394 U.S. 332, 339-40 (1969).

17. To establish citizenship for diversity purposes, a natural person must be a citizen of the United States and domiciled in a particular state. *Bank of N.Y. Mellon v. Nersesian*, 2013 WL 8284799, at *7 (C.D. Cal. 2013) (citing *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983)). Persons are domiciled in the places they reside with the intent to remain or to which they intend to return. *Nersesian*, 2013 WL 8284799, at *7 (citing *Kanter v. Warner-Lambert C*o., 265 F.3d 853, 857 (9th Cir. 2001)). Residence is prima facie evidence of one's domicile. *Sadeh v. Safeco Ins. Co.*, 2012 WL 10759737, at *4 (C.D. Cal. 2012) (citing *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994)). Plaintiff alleges that he currently resides in Madera County, California (Complaint ¶ 11.) Here, Plaintiff is a citizen of California as evidenced by the fact that he worked for Defendant as a Seasonal Associate in its Fresno, California store. (Huff Decl., ¶¶ 2, 6.) See *Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741 F.3d. 1082 (9th Cir. 2014) ("[A] court should consider the entire record to determine whether evidence of residency can properly establish citizenship.").

18. Conversely, Defendant is not a citizen of California. For purposes of 28 U.S.C. § 1332, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10). Thus, for purposes of a CAFA removal, a limited liability company's citizenship is treated in the same manner as a corporation's citizenship under traditional diversity standards.

19. Defendant is a limited liability company. (Huff Decl., ¶ 3.). At the time of the filing of the Complaint, Defendant was, and still is, organized under the laws of the State of Georgia and is therefore a citizen of the State of Georgia. (*Id*.)

20. Defendant's principal place of business is in Georgia. (*Id*.). To determine a corporation's principal place of business, the courts apply the "nerve center test," which deems the principal place of business to be the state where a corporation's officers "direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81 (2010). In practice, the principal place of business is "where the corporation maintains its headquarters." *Id.* at 92–93. Defendant maintains its principal place of business in Alpharetta, Georgia, where its executive and administrative offices are located, and where the majority of its executive and administrative functions are performed. (Huff Decl., ¶ 3.).

21. Another framework courts consider in determining citizenship of a limited liability company for diversity purposes is where a limited liability company is deemed to be a citizen of every state of which its members are citizens. *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990); *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) ("An LLC is a citizen of every state of which its owners/members are citizens."). Defendant's sole member is The Honey Baked Ham Company, LLC, which is an LLC organized under the laws of the State of Delaware. (Huff Decl., ¶¶ 4-5.)

22. Even considering this alternative framework, Defendant still remains diverse to Plaintiff. The Honey Baked Ham Company, LLC is a limited liability company organized under the laws of the state of Delaware. (*Id.*) At the time Plaintiff commenced this action and at the time of removal, Defendant had one member, which is incorporated in Delaware and maintains its principal place of business in Alpharetta, Georgia. (Huff Decl., ¶¶ 4-5.) None of the specified members reside in the State of California. Accordingly, for purposes of diversity jurisdiction, under this alternative framework, Defendant is a citizen of Delaware and Georgia, and not a citizen of the State of California.

23. The presence of Doe defendants in this case has no bearing on diversity with respect to removal. *See* 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded.").

24. Accordingly, the named Plaintiff is a citizen of a state (California) different from Defendant (Georgia or Delaware), and diversity exists for purposes of CAFA jurisdiction. *See* 28 U.S.C. §§ 1332(d)(2)(A), 1453.

**E. The Amount in Controversy Exceeds $5,000,000.**

25. This Court has jurisdiction under CAFA, which authorizes the removal of class actions in which, among the other factors mentioned above, the amount in controversy for all class members exceeds $5,000,000. 28 U.S.C. § 1332(d). "The claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds" this amount. 28 U.S.C. § 1332(d)(6).

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, California 92612
949.705.3000

7

NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

4906-7010-9744.6 / 052490.1106

26.     Although Plaintiff purports to cap the putative class damages at less than $5 million to avoid federal jurisdiction (Complaint ¶ 8), that allegation cannot defeat removal. *Standard Fire Insurance Company v. Knowles*, 133 S. Ct. 1345, 1349 (2013). As the United States Supreme Court recognized, Plaintiffs have no authority to cap damages to avoid federal court jurisdiction at the pre-certification stage, as Plaintiff has attempted to do here. *Id*. ("In sum, the stipulation at issue here can tie Knowles' hands, but it does not resolve the amount-in-controversy question in light of his inability to bind the rest of the class. For this reason, we believe the District Court . . . should have ignored that stipulation"). *Id.* at 1350.

27.     Plaintiff filed his Complaint on March 3, 2025, and he alleges a cause of action for violation of the Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200, *et seq.* (Complaint, ¶¶ 90-100). Alleging a UCL violation may extend the statute of limitations for Plaintiff's and the putative class's meal and rest period claims as well as the overtime and minimum wage claims from three to four years from the filing of the Complaint, which in this case extends the statute of limitations to March 3, 2021. *See* CAL. BUS. & PROF. CODE § 17208; *Cortez v. Purolater Air Filtration Products Co.*, 23 Cal.4th 163, 178-79 (2000) (four-year statute of limitations for restitution of wages under the UCL).

28.     As noted above, Defendant has employed approximately 1,974 hourly, non-exempt employees in California from June 19, 2023 to March 31, 2025.

29.     "In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (internal quotations omitted); *see also Schere v. Equitable Life Assurance Soc'y of the U.S.*, 347 F.3d 394, 399 (2d Cir. 2003) (recognizing that the ultimate or provable amount of damages is not what is considered in the removal analysis; rather, it is the amount put in controversy by plaintiff's complaint). The estimate of the amount in controversy should not be based on the "low end of an open-ended claim," but rather on a "reasonable reading of the value of the rights being litigated." *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 666 (3d Cir. 2002) (citation omitted).

30.     Further, as one district court held, "[u]nder this standard, the removing party's burden is 'not daunting,' and defendants are not obligated to 'research, state, and prove the plaintiff's claims for

LITTLER
MENDELSON,
P.C.
18565
Jamboree Road
Suite 800
Irvine,
California
92612
949.705.3000

damages.'" *Cagle v. C & S Wholesale Grocers, Inc.*, 2014 U.S. Dist. LEXIS 21571, at *19-20 (E.D. Cal. 2014) (citations omitted) (denying remand motion). That court noted that "[w]hen a '(d)efendant's calculations (are) relatively conservative, made in good faith, and based on evidence whenever possible,' the court may find that the '(d)efendant has established by a preponderance of the evidence that the amount in controversy is met.'" *Id*. at *20, quoting *Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008) (citations omitted). Importantly, Defendant need not provide summary judgment-type evidence. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007); *Cagle*, 2014 U.S. Dist. LEXIS 21571, at *21.

31. While Defendant denies Plaintiff's claims of wrongdoing and his request for relief, the facial allegations in Plaintiff's Complaint, when viewed in the light most favorable to Plaintiff, exceed the $5,000,000 jurisdictional minimum. *See Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999) (facts presented in notice of removal, combined with plaintiffs' allegations, sufficient to support finding that jurisdictional limits satisfied). The evidence establishes that threshold is met.

32. Plaintiff purports to bring claims on behalf of a class of hourly employees defined as "Plaintiff and all other similarly situated California residents who are or were employed by Defendant as non-exempt employees who worked at least" one shift for Defendant during the Class Period. (Complaint ¶ 12.) The Class Period is defined as "the period from four years prior to the filing of this Complaint through the date of certification" or from March 3, 2025, to the present. (Complaint ¶ 3)

33. Plaintiff claims that himself and the class members were not provided proper wages and overtime for all hours worked at the proper rates of pay, were required to work off-the-clock, were denied proper meal and rest periods and, as a result, failed to provide compliant wage statements. (Complaint ¶¶ 18-24.) Plaintiff further alleges that "Defendant committed, and continues to commit, acts of unfair competition as defined in the UCL." (Complaint ¶ 94.)

34. For purposes of removal, Defendant must assume (without conceding) the truth of Plaintiff's allegations for purposes of assessing amount in controversy. Plaintiff asserts claims on behalf of any non-exempt employees working at its California locations during the relevant time period of March 3, 2021, through the present.

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, California 92612
949.705.3000

9
NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT
4906-7010-9744.6 / 052490.1106

35. Plaintiff's Complaint asserts the following Class Action Claims for violations of various provisions of the California Labor Code: (1) Failure to Provide Compliant Meal Breaks and/or Pay Premiums, (2) Failure to Provide Compliant Rest Breaks and/or Pay Premiums, (3) Failure to Pay Overtime Wages, (4) Failure to Pay Minimum Wages, (5) Failure to Pay Timely Wages, (6) Failure Provide and Maintain Accurate Itemized Wage Statements, and (7) Unfair Business Practices.

**AMOUNT IN CONTROVERSY – MEAL PERIODS:**

36. Through his first cause of action, Plaintiff seeks to recover premium wages under Labor Code section 226.7 for failing to provide legally compliant meal periods, in the amount of one hour at the regular rate of pay (*See* Complaint ¶¶ 29-41). Here, Plaintiff alleges, "during the Class Period, Plaintiff and other Class Members worked a typical schedule of five (5) to seven (7) shifts per week, and they worked anywhere from eight (8) to fifteen (15) hours per shift." (Complaint ¶ 36.) Plaintiff further alleges that Defendant "did not authorize nor permit Plaintiff and the Class to take uninterrupted, duty-free, 30-minute meal breaks before the end of their fifth hour of work." (Complaint ¶ 37.) In addition, he alleges that "for shifts longer than ten (10) hours, Defendant did not authorize nor permit Plaintiff and the Class to take a second meal break." (Complaint ¶ 39.) Plaintiff alleges that "[a]s a result of the Defendant's policies and practices, the Class is entitled to recover damages under Labor Code 226.7 in an amount according to proof at trial for one additional hour of pay at their regular rate of compensation for each day in which Defendant failed to authorize and permit them to take meal breaks in compliance with the Labor Code and section 11 of the applicable Wage Order. (Complaint ¶ 41.) Under these circumstances courts have upheld assuming at least five missed meal period per week. *See Giannini v. Northwestern Mut. Life Ins. Co.,* No. C 12–77 CW, 2012 WL 1535196, at *3 (N.D. Cal. Apr. 30, 2012) (finding 100% violation rate for meal period claim reasonable based on allegation that the putative class members "routinely" did not receive meal periods). Here, based on 75,563 shifts and an average rate of pay of $18.60 average hourly rate of pay from June 19, 2023 to February 25, 2025, extrapolated to April 4, 2025, and the alleged 100% violation rate, the amount sought is $1,405,471.

**AMOUNT IN CONTROVERSY – REST PERIODS:**

37. Through his second cause of action, Plaintiff seeks to recover premium pay under Labor Code section 226.7 for failing to provide legally compliant rest periods, in the amount of one hour at the regular rate of pay (*See* Complaint ¶¶ 43-49).

38. While Defendant denies the validity and merit of Plaintiff's rest break claim, for purposes of removal only, based on Plaintiff's legal theory, Plaintiff alleges "during the Class Period, Defendant did not authorize nor permit Plaintiff and the Class to take a timely, duty-free, ten-minute rest break for each 4 hours of work or major fraction thereof during their shifts." (Complaint ¶ 47.) Plaintiff also alleges that "[a]s a result of the Defendant's policies and practices, the Class is entitled to recover damages under Labor Code 226.7 in an amount according to proof at trial for one additional hour of pay at their regular rate of compensation for each day in which Defendant failed to authorize and permit them to take rest breaks in compliance with the Labor Code and section 12 of the applicable Wage Order. (Complaint ¶ 49.) *See Giannini*, No. C 12–77 CW, 2012 WL 1535196, at *3 (finding 100% violation rate for rest period claim reasonable based on allegation that the putative class members "routinely" did not receive rest periods). Here, based on 75,563 shifts and an average rate of pay of $18.60 average hourly rate of pay from June 19, 2023 to February 25, 2025, extrapolated to April 4, 2025, and the alleged 100% violation rate, the amount sought is $1,405,471.

**AMOUNT IN CONTROVERSY – UNPAID WAGES:**

39. Through his third and fourth causes of action, Plaintiff seeks to recover unpaid wages alleging Defendant failed to pay him and class members for all hours worked, including time spent working when their meal or rest breaks were interrupted. (*See* Complaint ¶¶ 51-68).

40. California law requires employers to pay employees for all time worked. In addition, California Labor Code section 510 requires that employers pay nonexempt employees one-and-one-half times their regular rate for all hours worked over eight in a day or 40 in a week. Additionally, nonexempt employees must be paid one-and-one-half times their regular rate for the first eight hours worked on the seventh day worked in a single workweek. Employers must also pay double time for all hours worked

11
NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, California 92612
949.705.3000

4906-7010-9744.6 / 052490.1106

over 12 in a day, and for all hours worked in excess of eight on the seventh consecutive day of work in a single workweek. Cal. Lab. Code § 510(a).

41.    While Defendant denies the merits of Plaintiff's unpaid wage claims, for purposes of removal only, using a conservative estimate of just one hour of unpaid wages per week worked at the employees' average hourly rate of pay (not overtime) rate for the alleged off-the-clock work for non-exempt employees who worked equals $398,672.40 (21,434 workweeks x $18.60 x 1 hour). *See Torrez v. Freedom Mortg. Corp.*, No. EDCV 17-867 JGB (KKx), 2017 WL 2713400, *3 (C.D. Cal. Jun. 22, 2017) (finding assumption rate of three hours of overtime per week was reasonable where complaint allegations where defendant's assumptions were based on the allegations in the complaint that defendant "engaged in a pattern and practice" of wage abuse); *Stanley v. Distribution Alts., Inc.*, No. EDCV 17-2173 AG (KKx), 2017 WL 6209822, at *2-3 (C.D. Cal. Dec. 6, 2017) (finding that pleading "pattern and practice" supports assumption of two hours of overtime per week); *Herrera v. Carmax Auto Superstores California, LLC*, EDCV-14-776-MWF (VBKx), 2014 WL 12586254, at *6 (C.D. Cal. Jun. 12, 2014) ("Defendant cannot be expected to produce evidence of how often overtime violations may occur. Defendant must be entitled to monetize this claim with a reasonable and conservative estimate.").

**AMOUNT IN CONTROVERSY—FAILURE TO PROVIDE AND MAINTAIN ACCURATE ITEMIZED WAGE STATEMENTS**

42.    In his Sixth Cause of Action, Plaintiff alleges that Defendant "intentionally and willfully failed to provide Plaintiff and the Class with complete and accurate wage statements which included all of the required information under Labor Code section 226(a)." (Complaint ¶ 83.) Plaintiff alleges the wage statements "did not accurately reflect their gross wages earned, total hours worked, net wages earned, and all hours worked at each applicable hourly rate" and "failed to itemize the total number of compensable rest breaks and meal periods, the applicable rate of compensation, and the accurate gross wages paid for those periods during each pay period." (Complaint ¶ 83-84)

43.    Labor Code section 226(e) provides for a statutory penalty for violations of Labor Code section 226(a)'s wage statement requirements of $50 or actual damages per employee for the initial pay period in which a violation occurs, and $100 per employee for each violation in a subsequent pay period,

LITTLER MENDELSON, P.C.
18565 Jamboree Road
Suite 800
Irvine, California 92612
949.705.3000

not exceeding an aggregate amount of $4,000 per employee. CAL. LABOR CODE § 226(a). The statutory period for Labor Code section 226(e) penalties is one year. CAL. CODE CIV. PROC. § 340.

44. Defendant denies the validity and merit of Plaintiff's wage statement claim. For purposes of removal only, based on a review of its records, Defendant has employed at least 1,348 employees working 7,001 pay periods from March 3, 2024 to February 25, 2025, as non-exempt hourly paid employees with a 100% violation rate equals $631,700.

**AMOUNT IN CONTROVERSY: SECTION 210 PENALTIES FOR FAILURE TO COMPLY WITH SECTION 204**

45. Plaintiff claims penalties for "Section 210 Penalties for Failure to Pay Timely Wages for Violation of Labor Code § 204". (Complaint p. 17:9-10.) Similarly the prayer or relief seeks "An award to Plaintiff and the Class for all statutory penalties and any interest thereon, pursuant to Labor Code sections including but not limited to 204, 210, and 218.6, in an amount to be proved at trial." (Complaint, p. 24 Prayer for the Fifth Cause.)

46. Section 204 requires payment two times per month. Plaintiff alleges the failure to pay minimum wage, overtime, and meal and rest period premiums each violated Section 204. (Complaint ¶ 73 ["Here, during the Class Period, Defendant failed to pay Plaintiff and the Class all applicable wages at the time they were owed because it failed to pay them all premium wages, overtime wages, and regular wages for all time spent under Defendant's control."].)

47. Section 210 provides for penalties:

(a) In addition to, and entirely independent and apart from, any other penalty provided in this article, every person who fails to pay the wages of each employee as provided in Sections … 204 …, shall be subject to a penalty as follows:

(1) For any initial violation, one hundred dollars ($100) for each failure to pay each employee.

(2) For each subsequent violation, or any willful or intentional violation, two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld.

48. Defendant denies the validity and merit of Plaintiff's wage statement claim. For purposes of removal only, based on a review of its records, Defendant has employed at least 1,348 employees working 7,001 pay periods from March 3, 2024 to February 25, 2025, as non-exempt hourly paid employees with a 100% violation rate at $100 for the first pay period and $200 for each subsequent pay period equals of $1,268,900.[1]

**AMOUNT IN CONTROVERSY – ATTORNEYS' FEES:**

49. Moreover, Plaintiff seeks attorneys' fees in his Complaint pursuant to all of his causes of action (Complaint at Prayer for Relief). It is well settled that, in determining whether a complaint meets the amount in controversy requirement, the Court should consider the aggregate value of claims for damages as well as attorneys' fees. *See, e.g., Galt GIS v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998) ("Where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."). This, too, serves to further increase the amount in controversy.

50. In fact, the Ninth Circuit has an established benchmark of 25 percent of the amount recoverable for an award of attorneys' fees in class actions. *See Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees"); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (same). This 25 percent figure has been repeatedly relied upon by the courts to determine the amount in controversy for removal purposes. *Altamirano v. Shaw Indus., Inc.*, No. C-13-0939 EMC, 2013 WL 2950600, at *13 (N.D. Cal. June 14, 2013) (including 25 percent attorneys' fees to increase the amount in controversy to above $5 million CAFA threshold); *Giannini v. Nw. Mut. Life Ins. Co.*, No. C 12-77 CW, 2012 WL 1535196, at *4 (N.D. Cal. Apr. 30, 2012) (same).

---

[1] This removal assumes the matter is true regardless of any defenses to such a claim. See *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 US 283, 295-296, 58 S. Ct. 586, 593-594 (1938); *Riggins v. Riggins,* 415 F2d 1259, 1261-1262 (9th Cir. 1969) (finding statute of limitations defense might bar portion of relief sought did not affect amount in controversy); *Scherer v. Equitable Life Assur. Soc. of U.S.*, 347 F3d 394, 398 (2nd Cir. 2003) (finding the collateral estoppel doctrine might bar portion of relief sought did not reduce amount in controversy).

51. In California, where wage and hour class actions have settled prior to trial for millions of dollars, it is not uncommon for an attorneys' fee award to be 25 percent to 30 percent of the settlement and, thus even a conservative estimate of attorneys' fees in this matter would be far in excess of $1 million.[2]

52. Furthermore, in affirmatively ruling that attorney's fees "may be included in the amount in controversy," *see Galt G/S*, 142 F.3d at 1155, the Ninth Circuit "must have anticipated that district courts would project fees beyond removal." *Simmons*, 209 F. Supp. 2d at 1034-35. Just as the "court determines the amount in controversy based on the damages that can reasonably be anticipated at the time of removal," it also must "measure . . . fees . . . that can reasonably be anticipated at the time of removal, not merely those already incurred." *Id.*; *see also Cagle*, 2014 WL 651923, at *10-11 (holding that an estimate of the amount of attorney hours through trial was a reasonable estimate for purposes of determining amount in controversy); *Brady v. Mercedes-Benz USA, Inc.*, 243 F.Supp.2d 1004, 1010-11 (N.D. Cal. 2002) (holding that for determining amount in controversy, attorneys' fees should be assessed through trial, and finding amount in controversy met in part by reasonable estimate of fees). Therefore, the Court may consider a 25 percent attorney's fees award for the purposes of calculating the amount in controversy.

53. Thus, although Defendant denies that Plaintiff and the putative class are entitled to any relief, accepting Plaintiff's claims as true, and based on the reasonable, conservative assumptions derived from the evidence and the claims in Plaintiff's Complaint, the amount in controversy is over $5,000,000:

| Plaintiff's Alleged Claim | Amount in Controversy |
|---|---|
| Meal Period Premiums (1 missed meal periods per week) | $1,405,471 |

---

[2] *See Abasi v. HCA, the Healthcare Co. Inc.*, C.D. Cal. No. CV 03-7606 (May 9, 2005) (approving $4.75 million settlement for claims of unpaid overtime, meal and rest break periods; attorney's fee award totaling over $1.2 million (25 percent)); *Burns v. Merrill Lynch*, N.D. Cal. No. 3:04-cv-04135 (August 2005) (approving $37 million settlement for claims of failure to pay overtime; attorneys' fees of $9.25 million (25 percent)); *Coldiron v. Pizza Hut-Yum! Brands, Inc.*, C.D. Cal. No. 03-5865 (June 2006) (approving $12.5 million settlement for alleged improperly classified restaurant managers as exempt from overtime with attorneys' fees of $3.125 million (25 percent)); *Mousai v. E-Loan, Inc.*, N.D. Cal. No. 3:06-cv-01993-SI (January 12, 2007) (preliminary approval of settlement of $13.6 million for claims of unpaid overtime, and meal and rest break violations; attorneys' fees award estimated at $3.4 million (25%)).

| | |
|---|---|
| Rest Break Premiums (100% Violation Rate) | $1,405,471 |
| Failure to Pay Straight Time Wages | $398,672.40 |
| Failure to Provide Compliant Wage Statements | $631,700 |
| 210/204 penalties | $1,268,900 |
| **TOTAL (w/o attorney's fees costs or interest and continuing liability)** | **$5,110,214.40** |
| Attorneys' Fees (assumed 25%) | $1,277,553.60 |
| **AMOUNT IN CONTROVERSY** | **$6,387,767.60** |

54. Importantly, it should be noted that these amounts are only for partial periods of time, which will continue through certification and/or trial.

**NOTICE TO STATE COURT AND PLAINTIFF**

55. Concurrently with the filing of this Notice of Removal in the United States District Court for the Eastern District of California, written notice of such filing will be given by the undersigned to Plaintiff's counsel of record, and a copy of the Notice of Removal will be filed with the Clerk of the Court for the Superior Court of the County of Madera, California.

56. WHEREFORE, pursuant to 28 U.S.C. § 1332, 1441 and 1446, Defendant respectfully petitions the removal of this case from the Superior Court of the State of California for the County of Madera to the United States District Court for the Eastern District of California.

Dated:  April 7, 2025                              LITTLER MENDELSON, P.C.

                                                              */s/ Kimberly M. Shappley*
                                                              Jon G. Miller
                                                              James E. Hart
                                                              Kimberly M. Shappley
                                                              Attorneys for Defendant
                                                              HBH CALIFORNIA, LLC

4906-7010-9744.6 / 052490.1106

# CERTIFICATE OF SERVICE

I am employed in the County of Orange, State of California, over the age of eighteen years, and not a party to the within action. My business address is 18565 Jamboree Road, Suite 800, Irvine, California 92612.

On April 7, 2025, I served the within document(s):

**NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT**

On the interested parties addressed as follows:

| | |
|---|---|
| Amir H. Seyedfarshi<br>EMPLOYMENT RIGHTS LAWYERS, APC<br>6380 Wilshire Blvd., Suite 1602<br>Los Angeles, California 90048<br>Telephone:   424.777.0964<br>Email: amir@employmentrightslawyers.com<br><br>Attorneys for Plaintiff<br>JOSE GARCIA | Tatiana Hernandez<br>LAW OFFICE OF TATIANA HERNANDEZ, P.C.<br>315 South Beverly Drive, Suite 504<br>Beverly Hills, California 90212<br>Telephone:   213.909.4248<br>Email: tatiana@thlawpc.com<br><br>Attorneys for Plaintiff<br>JOSE GARCIA |

As follows:

☒ **BY MAIL (FRCP 5(b)(1)(C)):** I am readily familiar with the firm's practice of collection and processing correspondence for mailing with the U.S. Postal Service. Under that practice such envelope(s) is deposited with the U.S. postal service on the same day this declaration was executed, with postage thereon fully prepaid at 18565 Jamboree Road, Suite 800, Irvine, California 92612, in the ordinary course of business.

I hereby certify that I am employed in the Office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct. Executed on April 7, 2025, at Irvine, California.

*Karla Garcia*
Karla Garcia

4906-7010-9744.6 / 052490.1106